IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-01945-RBJ-KLM

THOMAS SMITH,

      Plaintiff,

v.

JANICE JONES, Colorado Department of Corrections Sergeant

      Defendant.

---

**ORDER and JUDGMENT**

---

      This case comes before the Court on defendant's motion for summary judgment [docket #48]. Because of the Court's ruling on that motion, two other pending motions are rendered moot.

      **Facts**

      Plaintiff Thomas Smith is an inmate housed at the Sterling Correctional Facility (SCF) in administrative segregation. Mr. Smith alleges that he was deprived of his Eighth Amendment right to be free from cruel and unusual punishment, because Sergeant Jones, a sergeant at SCF failed to document Mr. Smith's fear for his safety and he was subsequently assaulted on December 16, 2009.[1]

---

[1] This claim was originally filed against the Colorado Department of Corrections, Sterling Correctional Facility, Warden Kevin Milyard, Arastides Zavaras, Jesse Lovelace, and Janice Jones. The claims against the Colorado Department of Corrections, Sterling Correctional Facility, Kevin Milyard, and Arastides Zavaras were dismissed for lack of subject matter jurisdiction [#42]. In response to this motion for summary judgment, plaintiff acknowledges that he could not sustain a claim against Jesse Lovelace. The parties filed an unopposed motion to dismiss defendant Lovelace that was granted [#61]. In the response to motion to dismiss, the plaintiff also conceded that he could not establish a retaliation claim or a claim under the equal protection clause of the Fourteenth Amendment against Sergeant Jones.

Administrative Segregation at SCF

There are four segregation units at SCF, units 5, 6, 7, 8.  Mr. Smith was housed in housing unit 8.  Each unit contains four pods with sixteen cells.  The pods are separated by sliding doors operated by an officer in a unit control room.  Officers use the sliding doors to travel between pods for such purposes as delivering food, laundry and cleaning supplies to the inmates.

There are different levels of offenders housed in administrative segregation.  Level 4 offenders are offenders who are being considered for release back into the general population and are allowed to travel unescorted from their individual cell to the shower or to the recreation yard.  Level four offenders are not allowed to travel between pods unescorted.  SCF policy requires that inmates in administrative segregation must be tethered to the wall while using the phone.

Previous Complaints

Mr. Smith has had his share of problems while incarcerated.  In 2006 while at Buena Vista Correctional Facility, Mr. Smith informed corrections officers that his cellmate was part of a plot to escape.  Later, at SCF Mr. Smith reported to corrections officers about communications that he had intercepted involving other offenders' possessing weapons with the intent to use them on a staff member.  As a result of this reporting, Mr. Smith believed that other inmates labeled him a snitch, and that this put him at risk to be harmed by other inmates.

Mr. Smith also held divergent racial beliefs that he believed made him a target for violence from other inmates.  While at SCF, Mr. Smith displayed swastikas for other inmates to see.  Mr. Smith put a swastika on his cell door and carved one into the cement in the recreation

yard.  Mr. Smith was also vocal in his white supremacist beliefs.  Mr. Smith felt that these beliefs put him at risk.

Sometime prior to December 2009 two Hispanic inmates were mopping the floor outside Mr. Smith's cell.  Mr. Smith began making comments to the men about molesting and killing one of their granddaughters and negative comments about the Hispanic race.  When Mr. Smith came back to his cell after going to the shower, his cell had been covered in feces and urine, known as an "inmate cocktail."  At that time Mr. Smith told Sergeant Jones that he feared for his safety.  Mr. Smith alleges that Sergeant Jones failed to formally memorialize the "inmate cocktail" or Mr. Smith's fear for his safety.[2]

### December 16, 2009 Assault

On December 16, 2009 Mr. Smith was making a phone call in Pod D.  Pursuant to policy, Mr. Smith was chained to the wall.  At that time, Deputy Lovelace was the only officer in the unit control room and was responsible for opening and closing the sliding doors that connect pods.  About thirty minutes prior to the assault Deputy Lovelace opened the interconnecting door between Pods C and D to let Sergeant Jones pass through, and he negligently forgot to close the door.  About this time Juan Lopezmendez, a level four offender, was walking unescorted back from the shower to his cell in Pod C.  Mr. Lopezmendez saw that the interconnecting door between Pods C and D had been left open, entered Pod D, and began to assault Mr. Smith.  Deputy Lovelace called for help.  Sergeant Jones and Mr. Smith's case manager Mr. Manning were in a nearby control room that was separated from Pod D by a sliding door.  They rushed to the door and began banging on the door and yelling for Mr. Lopezmendez to stop the assault and

---

[2] Defendants neither admit nor deny that Sergeant Jones failed to record this incident or the complaint about Mr. Smith's safety.  Because this is a motion for summary judgment, all facts must be construed against the moving party.  As such, the analysis accepts as true Mr. Smith's allegation the Sergeant Jones failed to document this incident.

assume the prone position.  The sliding door was not immediately opened because it is against

SCF policy to allow only one corrections officer and one case manager to break up a fight

without additional support.  After 10-12 seconds, when additional backups were near, Deputy

Lovelace opened the sliding door and Sergeant Jones and Case Manager Manning entered the

cell and stopped the assault.  Mr. Lopezmendez responded to their commands and assumed the

prone position.  The entire assault lasted about 17 seconds.  As a result of the assault Mr. Smith

now argues that his Eighth Amendment rights were violated.

**Standard**

Generally, summary judgment is appropriate when "the movant shows that there is no

genuine dispute to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  Because the defendant asserts a qualified immunity defense the summary

judgment standard is subject to a "somewhat different analysis from other summary judgment

rulings." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006).  The qualified immunity

doctrine "shields government officials performing discretionary functions from liability for

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Toevs v. Reid*, 646 F.3d 752, 755 (10th

Cir. 2011) (internal citations omitted).  To overcome summary judgment based on qualified

immunity, the plaintiff "must show that the defendant's actions violated a specific statutory or

constitutional right, and that the constitutional or statutory rights the defendant allegedly violated

were clearly established at the time of the conduct at issue." *Steffey*, 461 F.3d at 1221.

This standard requires a two pronged analysis: "First a court must decide whether the

facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second,

the court must decide whether the right at issue was 'clearly established' at the time of the

defendant's alleged misconduct." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). The first prong requires that the Court determine whether the plaintiff "sufficiently asserted the violation of a constitutional right." *Lighton v. University of Utah,* 209 F.3d 1213, 1221 (10th Cir. 2000). The plaintiff "must do more than abstractly identify an established right, but must specifically identify the right and conduct . . . which violated that right." *Id.* A right is clearly established if it would have been "clear to a reasonable officer that his conduct was unlawful under the circumstances presented." *Id.; See also Saucier v. Katz*, 533 U.S. 194, 202 (2001). The plaintiff must satisfy both prongs to defeat a claim of qualified immunity. *Id.*

If a plaintiff succeeds in showing violation of a constitutional right, then the defendant bears the burden of showing that there are no material issues of fact that would defeat their claim of qualified immunity. *Lighton,* 209 F.3d at 1221.

### Conclusions

Mr. Smith argues that Sergeant Jones violated his Eighth Amendment rights by failing to memorialize Mr. Smith's concerns in administrative segregation and failing to protect him from the assault at the hands of Mr. Lopezmendez.

I agree that "[p]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Cortes-Quinones v. Jiminez-Nettleship,* 842 F.2d 556, 558 (1st Cir. 1988)). "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Id.* (internal citations omitted). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 834.

However, not every injury suffered by one prisoner at the hands of another rises to a constitutional violation in which a prison official is liable. *Id.* A prison official only violates the Eight Amendment when two requirements are met: the deprivation must be objectively sufficiently serious, and the prison official must have acted with a culpable state of mind. *Id.*

To establish that the deprivation is sufficiently serious based on a failure to prevent harm, "the inmate must show that he is incarcerated under conditions posing a substantial risk of harm." *Id.* This element is considered contextually, in light of contemporary standards of decency. *Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995). "Prison authorities must protect not only against current threats, but also must guard against sufficiently imminent dangers that are likely to cause harm in the next week or month or year." *Id.* There is no question that assault is sufficiently serious to constitute a constitutional violation. "Our society does not tolerate physical assaults" inside or outside of prison. *Id.* As such, Mr. Smith has met the first prong by showing an objectively serious violation.

However, it is less clear that Sergeant Jones knew that Mr. Smith was at risk to be assaulted and therefore acted with the requisite mental state in failing to protect him. The culpable state of mind required for liability is that of deliberate indifference to inmate health or safety. *Farmer,* 511 U.S. at 834. Deliberate indifference requires that the official know of and disregard an excessive risk to inmate health or safety. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Mr. Smith alleges that Sergeant Jones knew that he was a target for violence from other inmates and was therefore at risk to be assaulted. This allegation is based on his contention that (1) he was a known white supremacist who displayed swastikas; (2) he was known as a snitch

6

because he previously provided information to corrections department staff; and (3) his cell was sprayed with an "inmate cocktail" after he told another inmate that he would molest and kill his granddaughter.  Mr. Smith also argues that he had previously complained about his safety during phone calls because he was tethered to the wall while other inmates were free to move about.  Therefore, Mr. Smith argues that Sergeant Jones knew of and ignored an excessive risk of harm to his safety.

Not every inmate complaint about his or her safety requires action from corrections department staff.  A "plaintiff's allegations must furnish more than a conclusory claim of being afraid and aggravated." *Riddle v. Mondragon,* 83 F.3d 1197, 1205 (10th Cir. 1996).  For example, the First Circuit has held that it was insufficient to support an Eighth Amendment claim for failure to protect when the plaintiff made no allegation that he was physically attacked, nor did he complain that he was subjected to constant threats of violence.  *Street v. Fair,* 918 F. 2d 269, 272 (1st Cir. 1990).  In *Street* there was a single instance when the plaintiff was threatened with physical harm, but the court determined that this did not amount to a violation of the inmate's constitutional rights.  *Id.*  Similarly, in his complaint Mr. Smith says that he was at risk both because he was a "snitch" and a known white supremacist.   However, Mr. Smith does not cite to any violence or threats of violence because of his racial beliefs or cooperation with corrections department staff.

Mr. Smith's only specific complaint about his safety came directly after an isolated incident.  Mr. Smith told an inmate that he would rape and molest his granddaughter.  After that Mr. Smith's cell was sprayed with an "inmate cocktail" of feces and urine.  Following that incident, Mr. Smith told Sergeant Jones that he feared for his safety.  In her deposition Sergeant Jones explained that she understood Mr. Smith's fear to relate to this specific incident, that he

had gone too far.  Mr. Smith offers no evidence to suggest that the assault by Mr. Lopezmendez

was in any way related to this incident.  He had no prior dealings with Mr. Lopezmendez, and he

does not suggest that Mr. Lopezmendez knew anything about the incident.  Accordingly, this

isolated incident does not suggest that Sergeant Jones knew of and disregarded a substantial risk

of serious harm.

Finally, Mr. Smith argues that he had warned Sergeant Jones about being tethered while

on the phone in the past.  The only evidence Mr. Smith cites to is a different grievance in which

he references a previous complaint, "I feel this is in retaliation for my notifying Lt. Carpenter

that Sgt. Jones left me handcuffed to the phone while she let a level 3 inmate go unescorted to

the shower."  This complaint does not say whether Mr. Smith was afraid or why he was afraid.

Mr. Smith does not offer any evidence that he or other inmates had been threatened while on the

phone, or that any other acts of violence had occurred while an inmate was tethered to the phone.

Thus, fears that Mr. Smith may have expressed in the past do not rise above a conclusory claim.

Further, the undisputed facts show that Mr. Smith was assaulted because Deputy

Lovelace negligently left the sliding interconnect door between Pods C and D open.  As a result

Mr. Lopezmendez was able to enter Pod D and assault Mr. Smith.  Mr. Lopezmendez should not

have had access to Mr. Smith.  That Mr. Smith was vulnerable to attack was a result of a mistake

by Deputy Lovelace, not deliberate indifference by Sergeant Jones.  There is no evidence from

which it could reasonably be inferred that Sergeant Jones knew or should have known that Mr.

Smith would be in a vulnerable situation.

Finally, Mr. Smith has not offered any evidence to suggest that Sergeant Jones's failure

to document the "inmate cocktail" incident was related to the subsequent assault by Mr.

Lopezmendez.  To be liable, "[a] prison official's act or omission must <u>result</u> in the denial of 'the

minimal civilized measure of life's necessities.'" *Farmer v. Brennan,* 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (emphasis added).  Mr. Smith was assaulted because the sliding interconnect door was negligently left open between Pods C and D, and Mr. Lopezmendez was able to enter Pod D and assault Mr. Smith.  There is no evidence to suggest that had Sergeant Jones documented Mr. Smith's fears, the assault would not have occurred.

In sum, plaintiff has not come forward with sufficient evidence, even construed in his favor, to create a genuine issue of material fact as to whether Sergeant Jones was deliberately indifferent to his health or safety.  Accordingly, because there is insufficient evidence to create a triable issue as to whether Sergeant Jones violated Mr. Smith's constitutional rights, she is entitled to qualified immunity.

**Order**

1. Motion #48 is GRANTED.  The Court enters judgment in favor of the defendant, Janice Jones, and against the plaintiff, Thomas Smith.

2. Motion #66 and motion #67 are denied as moot.

3. This civil action is dismissed with prejudice, each party to bear his and her own costs.

DATED this 2nd of January, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge